**Ronald A. YARSULIK, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 62259.**

Missouri Court of Appeals,
Western District.

Oct. 28, 2003.

James A. Chenault III, Jefferson City, for Appellant.

Kendall Reid Vickers, Nevada, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

The director of the Department of Revenue asks us to determine whether or not a breath analyzer machine's producing a digital display of a breath test's results, but not a print-out, establishes that a driver had refused to submit to a chemical analysis contrary to his lawful obligations. We do not reach this issue, however, because the director did not present any evidence that the lack of a print-out resulted from the driver's refusal to provide an adequate sample. We, therefore, affirm the circuit court's judgment.

This dispute arose from an arrest of Ronald Yarsulik during the early morning hours of September 19, 2002, in Nevada. Police officer Aaron Kent saw Yarsulik driving a car that crossed a highway's center line 10 times. After Kent stopped Yarsulik's car for investigation, Kent smelled a strong odor of alcohol on Yarsulik's breath. Yarsulik failed several of Kent's sobriety tests. Yarsulik's physical appearance and his unsteady standing, his watery and bloodshot eyes, his dilated pupils, and his slurred speech enhanced Kent's belief that he was intoxicated.

Kent told Yarsulik that he was under arrest for driving while intoxicated. After transporting Yarsulik to the Vernon County sheriff's headquarters, Kent read a form to Yarsulik. The form explained basic constitutional rights and a driver's obligations to submit to a breath test. Yarsu-

lik indicated that he understood his rights and agreed to provide a breath sample. Kent explained the procedure, and Yarsulik indicated that he understood. Yarsulik twice attempted to take the breath test, but the breath analyzer machine did not complete the test and did not produce a print-out. The machine's digital display reported blood alcohol concentrations each time: .17 percent the first time and .20 percent the second. Kent included the digital readings in a supplemental report but recorded the tests results as "incomplete."

The director notified Yarsulik that she was revoking his driving license for refusing to submit to a chemical test. The circuit court issued a temporary restraining order staying the revocation.

The director and Yarsulik agreed to submit the case only on the records, including an alcohol influence report and Kent's supplemental report. Neither party presented any other evidence. The circuit court entered a judgment finding that Yarsulik did not refuse to submit to a chemical test and ordering the director to return Yarsulik's driving license to him immediately.

■ In reviewing the director's decision, the circuit court must determine whether or not: (1) the petitioner was arrested or stopped; (2) the officer had reasonable grounds—*i.e.*, probable cause—to believe that the petitioner was driving while in an intoxicated or drugged condition; and (3) the petitioner refused to submit to a chemical analysis. Section 577.041.4, RSMo Supp.2001; *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). The director must establish each element by a preponderance of the evidence. *Callendar v. Director of Revenue*, 44 S.W.3d 866, 868 (Mo.App. 2001). If the circuit court decides that the director did not establish any one of these elements, it must order reinstatement of the petitioner's driving license. Section 577.041.5, RSMo Supp.2001; *Hinnah*, 77 S.W.3d at 620. In reviewing the circuit court's judgment, we will affirm it unless it is not supported by substantial evidence or is contrary to the weight of evidence, or unless the circuit court has erroneously declared or applied the law. *Hinnah*, 77 S.W.3d at 620.

■ The parties do not dispute that Kent arrested Yarsulik with probable cause to believe that Yarsulik was driving while in an intoxicated condition. The uncontroverted evidence overwhelmingly established those elements, and Yarsulik agrees that the director met her burden of proving them. The only issue is whether or not Yarsulik refused to submit to a chemical analysis.[1]

1. The circuit court's judgment makes an express finding only concerning Yarsulik's refusing to submit to a breath test. In *Boyd v. Dir. of Revenue*, 43 S.W.3d 901, 904 (Mo.App. 2001), this court's southern district held that § 577.041.4 requires that, without an explicit finding concerning each of the three elements, the circuit court's judgment is not final. We disagree that a finding is required for elements that are not controverted and can be decided lawfully in only one way. Although § 577.041.4 says that the circuit court "shall determine" the three elements, a circuit court can determine an issue without making an express finding and certainly a circuit court is under no obligation to an-

nounce findings of fact unless the parties request it. We do not believe that remanding this case for an express finding of the other two elements would accomplish anything. As a matter of law, the uncontroverted evidence presented by the director requires a finding that Yarsulik was arrested and that Kent had probable cause to believe that Yarsulik was driving in an intoxicated condition. When substantial evidence supports an element of the director's case and that evidence is uncontroverted, the record will not support a determination that the director did not prove the element. *Berry v. Dir. of Revenue*, 885 S.W.2d 326, 327–28 (Mo. banc 1994). The Southern

■ The director argues that evidence of the machine's not producing a print-out of Yarsulik's test results was sufficient to prove that Yarsulik refused to submit to the test. "It would be pure speculation," she contends, "that the failure of the instrument to print a BAC result was attributable to anything other than [Yarsulik's] volitional failure to [do] what was necessary for the test to be performed, i.e., his failure to provide a complete breath sample."

Kent's supplemental report was the only evidence concerning how Kent administered the test. It said:

> I then explained to [Yarsulik] ... what was needed to be done to take the breath test, and he said that he understood. [Yarsulik] attempted two ... times to take the breath test and his sample came up incomplete. When [he] stopped blowing ... the first test time, the screen on the Data Master showed .17 and after the second attempt it showed .20, both being above the legal limit....

The director did not present evidence that Yarsulik did not cooperate in Kent's administration of the test, stopped blowing before being told to stop, did not blow hard enough, blew around the mouthpiece, or allowed air to escape. The only evidence of Yarsulik's refusing to take the test was Kent's evidence that Yarsulik "stopped blowing." The director offered no evidence that would explain why Yarsulik stopped blowing. We do not even know whether or not he stopped before Kent told him to stop. But the reason does not matter. A bald assertion that Yarsulik stopped blowing without establishing that he did so wrongfully is not enough to establish, even under a preponderance of the evidence standard, that he stopped blowing because he intended to thwart the test.

■ The director argues that the circuit court did not hear "evidence ... of health problems or malfunction of the instrument, or [other evidence that would] support a conclusion that the failure to produce a complete sample was attributable to anything other than the general lack of cooperation and belligerence that [Yarsulik] displayed[.]" This argument is flawed because applying that standard would relieve the director of the burden of establishing the refusal as part of her *prima facie* case. The director bears the burden of proof. *Hinnah,* 77 S.W.3d at 620; *Mayfield v. Director of Revenue,* 100 S.W.3d 847, 851 (Mo.App.2003); *Bacandreas v. Director of Revenue,* 99 S.W.3d 497, 500 (Mo.App. 2003); *Roberts v. Wilson,* 97 S.W.3d 487, 492 (Mo.App.2002). This burden requires her to establish a *prima facie* case by proving all three elements set out in § 577.041.4. *Hockman v. Director of Revenue,* 103 S.W.3d 382, 384 (Mo.App.2003).

District, however, apparently abandoned Boyd in *Tolliver v. Dir. of Rev.,* 117 S.W.3d 191 (Mo.App. 2003) (slip op.). The Tolliver court did not deem the lack of findings concerning two elements to negate a final judgment. Rather, it held that it considered the circuit court to have ruled those elements in accord with its judgment. Rule 73.01(c). The difference between this approach and the one that we choose is academic. Even were we to regard the lack of findings as evidencing that the circuit court had found that Yarsulik was not arrested and that Kent lacked probable cause to believe that Yarsulik was driving in an intoxicated condition, we would conclude that the court erred and that the director established those elements. As the Tolliver court noted, "we are not required to defer to the trial court's findings when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict." 117 S.W.3d at 196. Our opinion in this case has been reviewed and approved by order of the court en banc.

We, therefore, affirm the circuit court's judgment. The director did not prove that Yarsulik stopped blowing in an attempt to thwart the test.

THOMAS H. NEWTON, Judge, and RONALD R. HOLLIGER, Judge, concur.